UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CAPITAL ONE HOTEL GROUP
LLC,

                    Plaintiff,

          – *against* –

MT. HAWLEY INSURANCE
COMPANY,

                    Defendant.

**OPINION & ORDER**

24-cv-00485 (ER)

RAMOS, D.J.:

Capital One Hotel Group, LLC ("Capital One") brings suit against its insurer, Mt. Hawley Insurance Company ("Mt. Hawley"), for breach of its commercial insurance policy. Doc. 1. Before the Court are three motions: (1) Capital One's motion to amend its complaint, Doc. 36, (2) Mt. Hawley's motion to amend its answer, Doc. 37, and (3) Mt. Hawley's motion to strike Capital One's expert disclosure, Doc. 38. For the reasons set forth below, Capital One's motion to amend is DENIED, Mt. Hawley's motion to amend is GRANTED, and Mt. Hawley's motion to strike is DENIED.

## I.    BACKGROUND[1]

Capital One owns a hotel in Weslaco, Texas (the "Property"), Doc. 1 ¶¶ 8, 9, which was damaged by a windstorm on August 13, 2022, *id.* ¶ 19. At the time, the Property was covered by a commercial insurance policy issued by Mt. Hawley ("the Policy") that included coverage for damage caused by a windstorm. *Id.* ¶¶ 7–9, 12. After the windstorm, Capital One filed a claim with Mt. Hawley. *Id.* ¶ 21. Upon investigation of the claim, Mt. Hawley determined that, although there was damage to the Property that was covered by the Policy, the amount of covered damages did not exceed the Policy's deductible. *Id.* ¶¶ 22–27.

---

[1] The background is drawn from the factual allegations in the complaint.

## II.    PROCEDURAL HISTORY

Capital One filed a complaint on January 23, 2024, alleging that Mt. Hawley breached the Policy by failing to compensate Capital One for the actual value of the damages caused by the windstorm.[2]  *Id.* ¶¶ 27–32.  Mt. Hawley filed its answer on February 21, 2024.  Doc. 14.  The Court then entered a discovery plan and scheduling order ("Scheduling Order") on November 6, 2024.  Doc. 22.  The Scheduling Order allowed the parties to submit amended pleadings until December 27, 2024, and serve any expert reports by January 31, 2025.  *Id.* at 1–2.  It also contemplated that all discovery would be completed by June 30, 2025.  *Id.* at 2.

At the parties' request, Docs. 23, 27, 30, the Court held a conference on July 11, 2025, at which it granted the parties leave to file the instant motions.  Capital One filed its motion for leave to amend the complaint on July 28, 2025.  Doc. 36.  Mt. Hawley filed its motion for leave to amend the answer and motion to strike Capital One's expert disclosures on July 31, 2025.  Docs. 36, 37.

## III.    DISCUSSION

### A.  The Motions for Leave to Amend

#### 1.  Legal Standard

"Rules 15 and 16 of the Federal Rules of Civil Procedure set forth the standards under which a party may amend a pleading."  *Summerwind West Condominium Owners Association, Inc. v. Mt. Hawley Insurance Co.*, No. 22 Civ. 3165 (JPC), 2023 WL 8307561, at *3 (S.D.N.Y. Dec. 1, 2023).  At the outset of litigation, "[a] party may amend its pleading once as a matter of course" within certain prescribed time limits.  Fed.R.Civ.P. 15(a)(1).  Outside those limits, a party may amend only with the written consent of the opposing party or with leave of the court.  Fed.R.Civ.P. 15(a)(2).  At that

---

[2] The parties agree that venue in the Southern District of New York is proper because the Policy includes a Legal Actions Conditions Endorsement that states that "[a]ny litigation commenced by any Named Insured . . . against the [insurer] shall be initiated in New York."  Doc. 1 ¶ 3; Doc. 14 ¶ 3.

2

stage, the Second Circuit has explained, Rule 15 operates under a "permissive standard" that is "consistent with our 'strong preference for resolving disputes on the merits.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted). Once "the district court issues a scheduling order setting a date after which no amendment will be permitted," the permissive standard is replaced by the stricter "good cause" standard of Rule 16(b)(4). *Sacerdote v. New York University*, 9 F.4th 95, 115 (2d Cir. 2021).

Because Capital One and Mt. Hawley seek to amend their pleadings after the December 27, 2024, deadline in the Scheduling Order, Doc. 22 at 1, they must satisfy the good cause standard. Whether good cause exists depends primarily on the diligence of the party seeking amendment. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007). "[T]he court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint." *Cummins, Inc. v. New York Life Insurance*, No. 10-cv-9252 (TPG), 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012). Where delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts. *See, e.g.*, *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (noting that delayed discovery and settlement negotiations deferred the plaintiff's ability to discover facts and holding that the plaintiff acted diligently by seeking leave to file an amended complaint only two months after acquiring information). While the diligence inquiry is the primary consideration, courts may also consider other relevant factors including whether the proposed amendment would result in prejudice to the non-moving party. *See Kassner*, 496 F.3d at 244.

Even if Capital One and Mt. Hawley can show good cause, they must also show that amendment is permitted pursuant to Rule 15. *Pasternack v. Shrader*, 863 F.3d 162, 174 n.10 (2d Cir. 2017). Under that rule, a court may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing

party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted).

    2. *Capital One's Motion for Leave to Amend the Complaint*

Capital One moves for leave to amend the complaint to add new allegations regarding the Policy's Appraisal Provision. The Appraisal Provision provides as follows:

> If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree on an umpire, either may request that selection be made by a judge of a federal court having jurisdiction. The appraisers will state separately the amount of loss, including an itemized determination of (1) the actual cash value for each damaged item included in the claim, and (2) the replacement cost value, if applicable under the policy, for each damaged item included in the claim. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding, and the decision must be itemized as specified in (1) and (2) above. Each party will:
>
>     a. Pay its chosen appraiser; and
>
>     b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.
>
> Under no circumstance is appraisal allowed under this policy to determine causation or the existence or non-existence of coverage. Appraisal is also not allowed where coverage for the claimed loss has been denied in its entirety. You cannot invoke appraisal after suit has been filed.

Doc. 36-6 ¶ 39. The proposed amended complaint alleges that, on March 23, 2023, and May 15, 2023, Mt. Hawley "wrongfully den[ied]" Capital One's "invocation" of this provision by "misrepresent[ing]" it terms. Doc 36-6 ¶¶ 44–48. In particular, Capital One alleges that Mt. Hawley "intentionally and knowingly" misrepresented the Appraisal Provision when it stated in two letters to Capital One that "[u]nder the Policy's explicit terms, appraisal is not allowed in this situation because the dispute in this case is predominantly one of causation and coverage, not the amount of loss." Doc. 36-6 ¶¶ 43–44. Mt. Hawley contends that this was a misrepresentation because the Appraisal

Provision does not itself contain the term "predominantly." Doc. 36 at 2–3. Based on this theory, Capital One seeks to add three new claims for: (1) a declaratory judgment that Mt. Hawley improperly denied Capital One its right to appraisal, *id.* ¶¶ 36–56, (2) breach of contract based on the Appraisal Provision, *id.* ¶¶ 57–79, and (3) fraud and misrepresentation, *id.* ¶¶ 80–89.

Mt. Hawley contends that the Court should deny Capital One leave to amend the complaint because Capital One "has not established any diligence whatsoever." Doc. 41 at 7. The Court agrees. As Mt. Hawley correctly notes, Capital One "was well-aware of Mt. Hawley's use of the term 'predominantly' when rejecting [the] appraisal demand in March 2023," because it received the letter with that representation. *Id.* And Capital One "was also aware that the Appraisal [P]rovision of the Policy did not contain that word because" in the same letter—which Capital One appends to its motion—Mt. Hawley "*quoted the provision verbatim.*" *Id.*; *see* Doc. 36-2 at 2. Indeed, in the letter, Mt. Hawley not only quoted the entirety of the Appraisal Provision—it also bolded and underlined the language that Capital One now claims that Mt. Hawley misrepresented. Doc. 36-2 at 2. "When [Capital One] commenced this action, therefore, [it] had all the information necessary to support [its proposed] claim[s], and nothing [it] learned in discovery or otherwise altered that fact."[3] *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 341 (2d Cir. 2000). Thus, Capital One's motion for leave to amend the complaint is denied.

---

[3] In support of its motion, Capital One also notes that, during a deposition, Mt. Hawley's claim examiner stated that the Property had "minor" damage and contends that that term "was not defined in the subject policy." Doc. 36 at 4. It is not clear to the Court how the claim examiner's statement supports the proposed amendments, and Capital One's motion does not clearly explain why it would. But to the extent that Capital One means to argue that the statement shows that Mt. Hawley denied the appraisal demand because the dispute was "predominantly one of causation and coverage," the Court notes that that information was already available to it in March 2023 for the reasons set forth above. Nor does the examiner's use of the term "minor" affect that conclusion, especially given that the March 2023 letter also explained that the claim was being rejected because the "property sustained only minimal damage to the roof." Doc. 35-2 at 1–2.

### 3. *Mt. Hawley's Motion for Leave to Amend the Answer*

Mt. Hawley seeks to amend its answer to add an affirmative defense based on fraud. Doc. 37-19 at 11–12. In support of that defense, the proposed amendment alleges the following.

Sometime during the Policy period but before the windstorm, Mt. Hawley "obtained an inspection report for the Property, which noted the overall poor condition of the roof and the fact that various shingles were actually missing." *Id.* at 12. In that report, Mt. Hawley "specifically recommended that [Capital One] retain a qualified roofer to inspect the roof and make necessary repairs and upgrades." *Id.* Mt. Hawley also separately "advised [Capital One] that [it] must comply with the recommendations in the inspection report in order to keep coverage in place for the Property." *Id.* Although Capital One's owner, Alex Fawaz, and general manager, Ruben Villanueva, represented that "the work had been done" by a qualified roofer in February and March of 2022, they have since admitted that a qualified roofer neither inspected nor repaired the roof. *Id.* To "trick Mt. Hawley into believing that the recommendations had been complied with," Fawaz and Villanueva also "provide[d] fraudulent photographs of a completely different roof than the one Mt. Hawley had insured." *Id.*

The Policy includes a "Commercial Property Conditions" provision, which contains a "Concealment, Misrepresentation, or Fraud" section (the "Fraud Provision"). *Id.* That section states:

> This Coverage Part is void in any case of fraud by [the insured] as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. Your interest in the Covered Property; or
> 4. A claim under this Coverage Part.

6

*Id.* The proposed amended answer alleges that because Capital One engaged in a fraudulent scheme to cause Mt. Hawley to insure the Property without complying with the roof-related requirements imposed by Mt. Hawley's underwriter, Capital One violated the Fraud Provision and thus voided the Policy. *Id.*

### a. Rule 16

Mt. Hawley contends that it has shown good cause to amend its answer because the facts that were required to allege its defense under Fed.R.Civ.P. 9(b) "were not fully exposed until the end of the discovery period." Doc. 37 at 2, 14. An affirmative defense that sounds in fraud must also meet the heightened pleading standards imposed by Rule 9(b). *Signify North America Corp. v. Reggiani Lighting USA, Inc.*, No. 18 Civ. 11098 (ER), 2020 WL 1331919, at *4 (S.D.N.Y. Mar. 23, 2020). Rule 9(b) requires that a complaint alleging fraud state the circumstances constituting fraud with particularity. *See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Specifically, Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Put differently, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *United States ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (quoting *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04 Civ. 704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009)).

Here, Mt. Hawley has shown that it was diligent in discovering the facts necessary to plead the proposed fraud defense under Rule 9(b), and thus satisfied the good cause standard under Rule 16. At bottom, Mt. Hawley's proposed defense is based on Capital One's alleged misrepresentation that a qualified roofer had inspected and repaired the roof of the Property per the underwriting recommendation requirements.

But, as Mt. Hawley explains in its motion, it could not have reasonably known the facts required to allege this misrepresentation at earlier stages of this litigation, especially given Rule 9's heightened pleading standard for fraud claims. For one, Mt. Hawley had no reason to know that a qualified roofer had not completed the work until: (1) Fawaz indicated in his April 3, 2025, deposition that he was not aware of any roofing contractor having evaluated the roof before the storm, Doc. 37-6 at 14:17–21, and (2) Villanueva testified in his May 14, 2025, deposition that a qualified roofing contractor had never gone up on the roof and made all the needed repairs recommended in the inspection report, Doc. 37-12 at 44:18–24. And Mt. Hawley did not possess information about Capital One's specific representations regarding the roof work until it received Capital One's emails to its insurance agent and broker on May 6, 2025, and June 2, 2025. *Id.* at 3–4, 13; Docs. 37-7–11, 17, 18.[4] In other words, until June 2, 2025, Mt. Hawley did not have "the who, what, when, where and how of the alleged fraud" in this case. *Kester*, 23 F. Supp. 3d at 252.

Significantly, Mt. Hawley was also diligent in obtaining these emails. Mt. Hawley first requested these records from Capital One in its initial request for production on October 24, 2024.[5] Doc. 37-16 at 4–5. And when Capital One did not produce

---

[4] In the emails, Capital One's insurance agent, Brown & Brown, copied the text of the recommendation and the inspector's picture of the roof, and asked Fawaz to "review [the recommendation] and submit documentation of recommendation compliance (pictures, work orders, receipts, etc.)." Doc. 37-7 at 4–5. After some back and forth with the agent, Fawaz stated, "All the work has been done," and that he and Villanueva "w[ould] get [the agent] the photos by next week" because they were currently traveling. Doc. 37-8 at 2. When the agent followed up on the request for photos, Villanueva responded that he and Fawaz were "still trying to get [the agent] updated photos on [sic] the roof" but could not provide them at the moment because he and Fawaz "were away on business when the roof was repaired and the roofer did not take photos of the work." Doc. 37-8 at 1. When the agent again requested the photos "to avoid [the] issuance of [a] cancellation notice," Fawaz sent three photos along with the message, "Please see the attached." Doc. 37-9 at 1. Fawaz and Villanueva's responses were all included in the same email thread that contained Brown & Brown's initial request for "documentation of recommendation compliance." Doc. 37-7 at 4–5.

[5] Mt. Hawley's initial request for production requested, *inter alia*, (1) "any and all materials . . . reflecting or relating to any actual or proposed repairs or modifications that were made to the Property at any time during the five years preceding the [August 13, 2022, wind storm]" and (2) "all materials . . . relating to any physical damage at the Property at any time during the ten years preceding the [August 13, 2022, wind storm]." Doc. 37-16 at 4–5.

responsive records, Mt. Hawley obtained the relevant emails through subpoenaing records from Capital One's insurance agent and broker. Docs. 37-14, 37-15. Thus, "this is not a case where the party seeking tardy amendment has simply rested on information it knew or should have known before the amendment deadline." *Summerwind*, 2023 WL 8307561, at *4.

Capital One does argue that Mt. Hawley "is attempting to assert an affirmative defense of fraud based on information, evidence[,] and discovery that was already in its possession." Doc. 39 at 4. In support of this contention, Capital One highlights that even though the proposed amendment alleges that Capital One "provide[d] fraudulent photographs of a completely different roof than the one Mt. Hawley had insured," Doc. 39-19 at 12, Mt. Hawley had access to the allegedly fraudulent photographs before this suit was filed—along with a report that noted that there was a discrepancy between the roof color in the photographs provided by Capital One and the photographs in the underwriting file, Doc. 39 at 3. In response, Mt. Hawley does not dispute that it possessed the relevant photographs or the report noting the discrepancy between them, but rather asserts that it "did not learn" that "the photographs submitted to Mt. Hawley as proof of compliance were of a completely different roof . . . until [Capital One] deposed Mt. Hawley's engineer in this case." Doc. 44 at 2.

Of course, the fact that Mt. Hawley's own engineer was able to ascertain that photographs that Mt. Hawley already possessed were of different roofs would suggest that Mt. Hawley should have known that fact before the amendment deadline. Thus, if Mt. Hawley's fraud defense was based solely on the theory that the photographs were themselves misrepresentations, its diligence in pursuing this defense would be questionable. But the Court need not address Mt. Hawley's diligence in that regard because Mt. Hawley's claim is premised on a different representation—that is, Capital One's representation, in emails from Villanueva and Fawaz, that it had complied with the inspection report's recommendation that a qualified roofer inspect and repair the damage

9

to the roof.  And, for the reasons just explained, Mt. Hawley could not have known sufficient facts to allege fraud based on that representation prior to the deadline for amended pleadings, especially given Rule 9(b)'s heightened pleading standard for fraud claims.  Put simply, Mt. Hawley did not have "all the information necessary to support" its proposed defense before the close of discovery.  *Parker*, 204 F.3d at 341.  Thus, Mt. Hawley has satisfied the good cause standard.

> b.  *Rule 15*

Capital One argues that, even if Mt. Hawley has shown good cause, leave to amend should be denied because the proposed defense is frivolous, and thus amendment would be futile.  Doc. 39 at 3.  In general, "[l]eave to amend to add an affirmative defense may be denied on futility grounds if the defense would not withstand a motion to strike pursuant to Federal Rule of Civil Procedure 12(f), which applies the same standard governing Rule 12(b)(6) motions to dismiss."  *Summerwind*, 2023 WL 8307561, at *4.

Capital One argues that amendment would be futile for two reasons.  First, Capital One contends that the defense is frivolous because the evidence shows that Capital One "did not conceal or misrepresent any material facts surrounding this claim."  Doc. 39 at 4.  In support of this contention, Capital One relies on an August 29, 2022, report produced by Mt. Hawley's independent adjuster that attributes "the discrepancy between the roof color in the underwriting report and the roofer's photographs . . . to a discoloration of the shingles from algae growth on the roof."  *Id.* at 3.  Second, Capital One argues that, even if Mt. Hawley has sufficiently alleged a misrepresentation, Mt. Hawley has failed to provide evidence that Capital One had any fraudulent intent.  *Id.* at 4.

"By predicating . . . [its] futility arguments on the evidentiary sufficiency of [Mt. Hawley's] affirmative defense, [Capital One] appear[s] to be inviting this Court to assess [Mt. Hawley's] motion under a summary judgment standard."  *Summerwind*, 2023 WL 8307561, at *6. But, as other courts have noted, in general, "consideration of the

10

evidentiary basis for a proposed [amendment] is inappropriate," because the futility inquiry "generally proceeds according to the standard applicable under Rule 12(b)(6)." *Id.* (quoting *HCC, Inc. v. R H & M Machine Co.*, 39 F. Supp. 2d 317, 324 (S.D.N.Y. 1999)). And because the Court lacks the benefit of summary judgment briefing on either of these issues, the Court declines to exercise its discretion to consider the proposed amendment under the Rule 56 standard. *Id.*; *see also Esplanade 2018 Partners, LLC v. Mt. Hawley Insurance Co.*, No. 23 Civ. 3592 (DEH), 2025 WL 307401, at *3–4 (S.D.N.Y. Jan. 27, 2025).

Because Capital One presents no other grounds for denying leave to amend,[6] the Court concludes that amendment is proper. *See Summerwind*, 2023 WL 8307561, at *4 n.3 (taking the same approach); *Esplanade*, 2025 WL 307401, at *4 (same).

### B. Mt. Hawley's Motion to Strike

Mt. Hawley also argues that Capital One should be barred from offering any expert testimony regarding the causation or scope of damage to the Property or the reasonable cost of repairs because Capital One failed to timely disclose its expert. Doc. 38 at 5–6.

#### 1. Legal Standard

Rule 26(a)(2) governs the disclosure of expert testimony. Pursuant to Rule 26(a)(2)(A), a party must disclose the identity of any expert witness it may use at trial. Fed.R.Civ.P. 26(a)(2)(A). And if the witness is "retained or specially employed to provide expert testimony in the case" or one "whose duties as the party's employee

---

[6] To be sure, Capital One does argue—without further explanation—that granting the motion "would cause undue delay, and prejudice to [it] as litigation has been ongoing." Doc. 39 at 4. But because Capital One makes no effort to develop this conclusory argument, the Court considers it waived. And, in any event, the Court does not see how the amendment would cause undue delay or prejudice, especially given that "it is unclear what additional discovery Plaintiff would require to respond to Defendant['s] allegations respecting Plaintiff's own conduct," no trial date has been set, and neither party has moved for summary judgment. *See Summerwind*, 2023 WL 8307561, at *7 (concluding that undue prejudice did not result from an amendment under similar circumstances).

regularly involve giving expert testimony," a party must also serve with its disclosure a report containing:

>   (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
>   (ii) the facts or data considered by the witness in forming them;
>
>   (iii) any exhibits that will be used to summarize or support them;
>
>   (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
>   (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
>   (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed.R.Civ.P. 26(a)(2)(B).[7] "A party must make these disclosures at the times and in the sequence that the court orders." Fed.R.Civ.P. 26(a)(2)(D).

Failure to comply with Rule 26(a) can result in sanctions pursuant to Rule 37(c)(1). Fed.R.Civ.P. 37(c)(1). "The party seeking Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information." *New World Solutions, Inc. v. NameMedia Inc.*, 150 F. Supp. 3d 287, 304 (S.D.N.Y. 2015) (quoting *Markey v. Lapolla Industries, Inc.*, No. 12 Civ. 4622, 2015 WL 5027522, at *16 (E.D.N.Y. Aug. 25, 2015), *report and recommendation adopted*, 2016 WL 324968 (E.D.N.Y. Jan. 26, 2016)). "A district court has wide discretion" to impose sanctions under Rule 37, including the preclusion of the expert testimony. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294, 296 (2d Cir. 2006). Preclusion, however, is a "harsh remed[y] and should be imposed only in rare situations." *Update Art, Inc. v. Modiin Publishing, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must

---

[7] Parties may be exempted from this requirement when "otherwise stipulated or ordered by the court." Fed.R.Civ.P. 26(a)(2)(B).

12

consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988).

In general, courts consider the following factors when determining whether preclusion is warranted: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Design Strategy*, 469 F.3d at 296. "[A]lthough a 'bad-faith' violation of . . . Rule 26 is not *required* in order to exclude evidence pursuant to Rule 37, it can be taken into account as part of the party's explanation for its failure to comply." *Id.*

### 2. Discussion

Mt. Hawley has met its threshold burden to show that Capital One has failed to timely comply with Rule 26(a)'s disclosure requirements. Under the Scheduling Order, the parties were required to serve any expert reports by January 31, 2025, and complete discovery by June 30, 2025. Doc. 22 at 2. But, as Mt. Hawley notes, Capital One failed to disclose the identity of its expert, Grant Renne, until March 21, 2025—nearly two months after the expert report deadline. Doc. 38 at 2–3; Doc. 38-1. And Capital One did not serve its expert report until July 7, 2025—over a month after the close of discovery. Doc. 38 at 3; Doc. 40 at 3.[8] And that was so even though the report itself is dated June 6, 2025. Doc. 38-5 at 1. Thus, Capital One plainly failed to timely meet its expert disclosure obligations.

---

[8] In its motion, Mt. Hawley argues that even though Capital One served an expert report, it has nonetheless failed to substantively comply with Rule 26(a)(2)(B)(vi) because it "has never provided" Renne's hourly rates or a statement of his compensation. Doc. 38 at 3 n.3. But because that information is clearly outlined in Renne's report, *see* Doc. 38-3 at 7 ("I have charged $1,500 for this effort as of the date of this report and my standard rate is $350 an[] hour."), the Court treats the report as substantively compliant with Rule 26(a)(2)(B)(vi).

13

Because Mt. Hawley has shown that Capital One failed to timely file its expert disclosures and report, the Court must consider the four factors outlined in *Design Strategy*.

The first factor, Capital One's explanation for its failure to timely comply with its disclosure requirement, weighs slightly in favor of preclusion. Capital One attributes its delay in serving the expert report to Renne: Capital One explains that it was "reliant on Mr. Renne's timing and availability to review and prepare the report," and that it "sent multiple mails to Mr. Renne following up on the report and made countless phone calls" that "went unanswered" and or resulted in assurances that "the report was almost ready." Doc. 40 at 3. Capital One also asserts that, after "it was made known to both parties that certain photographs contained in [Mt. Hawley's] file were of another property," it "needed to verify that the correct photographs were sent to Mr. Renee for his evaluation." *Id.*

But, even if Renne delayed the completion of the report, Capital One does not explain why it failed to disclose Renne's identity or the fact of his forthcoming report until two months after the expert report deadline. *See Design Strategy*, 469 F.3d at 297 (weighing a party's failure to explain why it failed to comply with the disclosure requirement in favor of preclusion). Nor does Capital One explain why it failed to serve the report until one month after its apparent completion—or why it failed to notify the Court or Mt. Hawley about the issues contributing to the delay. *See Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (noting that the fact that a party "could have notified the court and the [opposing party] of the" issue causing the delay "several months earlier than it did" favored preclusion); *see also Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 434–35 (S.D.N.Y. 2014) (a party's failure to "even seek leave to proffer a tardy expert's report" weighs in favor of preclusion). Thus, Capital One's explanation is, at best, incomplete. On the other hand, the Court notes that "nothing in the record suggests that [Capital One's] conduct involved bad

14

faith." *Hogan v. Vandewater*, No. 7:11-cv-0754 (DNH/ATB), 2016 WL 7634430, at *5 (N.D.N.Y. Apr. 27, 2016).  Indeed, that Capital One has offered to "coordinate and work with [Mt. Hawley] in good faith to allow for any and all depositions [Mt. Hawley] deem[s] necessary of" Renne suggests that its delay was not an attempt to gain any tactical advantage.  Doc. 40 at 5.  Thus, while Capital One's explanation for its noncompliance certainly favors preclusion, in the absence of bad faith, the Court will not weigh this factor heavily.

By contrast, the second factor, the importance of the testimony, weighs strongly against preclusion because Renne's testimony is essential to a central issue in this case: the extent to which the roof damage was attributable to the effects of the storm.  Doc. 38-3.  Indeed, on this point, both parties appear to agree, as Mt. Hawley does not even attempt to dispute the importance of Renne's testimony to Capital One's case.  In addition, Renne is the only expert that Capital One relies on in this case, thus bolstering his importance to Capital One's affirmative case.  *Cf. Softel*, 118 F.3d at 962 (noting that the fact that a party "did have another expert it could, and did, use" to support its case reduced the importance of the potentially precluded testimony).  Thus, the importance of Renne's testimony weighs heavily against preclusion.

Where, as here, testimony is "extremely important" to a plaintiff's case, the Second Circuit has cautioned that "only extreme misconduct on the part of the plaintiff or extreme prejudice suffered by the defendants would justify the extraordinary sanction of preclusion." *Outley*, 837 F.2d at 591.  Here, however, any prejudice that Mt. Hawley would suffer is slight and can be easily remedied at this stage of the proceedings.  *See Hogan*, 2016 WL 7634430, at *5.  Although discovery has closed, both parties are still seeking to amend their pleadings, and neither party has moved for summary judgment.  *See Chen*, 8 F. Supp. 3d at 435 (finding prejudice when the "effect [of the Rule 26(a) violation was] to sandbag the other parties after the motions for summary judgment were filed[] [and] depriv[e] them of timely access to [the expert's] analysis"); *Haas v.*

15

*Delaware & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008) (same). At this point, moreover, Mt. Hawley has been aware of Renne and had access to his report "for a significant period of time." *Hogan*, 2016 WL 7634430, at *5; *cf. Design Strategy*, 469 F.3d at 297 (noting that the fact that an expert had yet to prepare a report supported a finding of prejudice). Thus, "[t]his is not the case of a party 'sandbagging' an opponent at trial with information that the opponent did not know existed, in an attempt to gain an unfair tactical advantage." *Hogan*, 2016 WL 7634430, at *5.

Moreover, as no trial date has been set, a continuance is available. Nor is the Court presented with a situation where the "enormous length of every step of the proceedings . . . militates against any more continuances." *Softel*, 118 F.3d at 963.[9] Thus, while Mt. Hawley has been prejudiced by Capital One's untimely disclosures, at this stage of the proceedings, the "actual difficulties" that would result from Capital One's Rule 26 violations may be remedied by "less drastic responses" than preclusion. *Outley*, 837 F.2d at 591. Therefore, rather than prohibit Capital One from relying on its expert, the Court will reopen discovery for limited basis of permitting Mt. Hawley to inquire into the bases or methodology of Renne's opinions and retain any rebuttal experts.

## IV.    CONCLUSION

In sum, the Court denies Capital One's motion to amend the complaint, grants Mt. Hawley's motion to amend the answer, and denies Mt. Hawley's motion to strike. The parties are directed to jointly file a proposed discovery schedule regarding Capital One's expert by March 31, 2026.

The Clerk of the Court is respectfully directed to terminate the motions. Docs. 36–38.

---

[9] For obvious reasons, this case also does not fall into the category of cases involving intellectual property issues in which the Second Circuit has observed that the "burden . . . of granting a continuance is greater than in some other cases." *Softel*, 118 F.3d at 962; *see also Variblend Dual Dispensing Systems LLC v. Crystal International (Group.) Inc.*, No. 18-CV-10758 (ER), 2022 WL 17156550, at *16 (S.D.N.Y. Nov. 22, 2022) (relying in part on the importance of discovery management in intellectual property cases in granting a motion to strike).

It is SO ORDERED.

Dated:    March 24, 2026
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

17